UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALEXIS M. HERMAN, Secretary of Labor, United States Department of Labor,<br><br>            Plaintiff,<br><br>        v.<br><br>HECTOR I. NIEVES TRANSPORT, INC., a corporation; and HECTOR I. NIEVES RIVERA, individually and as President; and LUZ M. ROSENDO DE NIEVES, individually and as Secretary and Treasurer,<br><br>        Defendants. | Civil No. 96-2479 (JAF) |

-------------------------------------------

### OPINION AND ORDER

On December 2, 1996, Plaintiff, Alexis M. Herman, Secretary of Labor for the United States Department of Labor, filed suit pursuant to the Fair Labor Standards Act of 1938 ("the FLSA" or "the Act"), 29 U.S.C. §§ 201-219 (1994), against Defendants, Héctor I. Nieves Transport, Inc. ("Nieves Transport"); Héctor I. Nieves-Rivera ("Nieves"), individually and as president of Nieves Transport; and Luz M. Rosendo de Nieves ("Rosendo"), individually and as secretary/treasurer of Nieves Transport, for allegedly violating the overtime compensation and record-keeping provisions of the Act, 29 U.S.C. §§ 207(a) and 211(c).

Civil No. 96-2479 (JAF)                                              -2-

On January 15, 1999, we granted Plaintiff's motion for partial summary judgment and found that Defendants were not exempt from paying overtime compensation under section 13(b)(1) of the FLSA, 29 U.S.C. § 213(b)(1).

In a bench trial, we tried both alleged issues. At the close of trial on September 13, 1999, we granted Plaintiff's motion to conform the pleadings to the evidence presented. Subsequently, Plaintiff amended the pleadings to add violations of the minimum-wage provisions of the Act, 29 U.S.C. § 206.

Upon consideration of the evidence, the arguments of the parties, and the record, we make the following findings of fact and rulings of law.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT

I.   **FINDINGS OF FACT**

A.   **Defendants as Employers of Truck Drivers**

1.   Defendant Nieves Transport is a corporation duly organized under the laws of the Commonwealth of Puerto Rico and is engaged in the business of transporting goods, including petroleum commodities, by truck.

2.   Defendant Nieves Transport regulates the employment of all persons employed by them and acts, directly or indirectly, in the corporation's interest with respect to those employees.

Civil No. 96-2479 (JAF)                                                    -3-

3.  Defendant Nieves, residing within the jurisdiction of this court, is president of Nieves Transport, actively controls and manages this corporation by regulating the employment of its personnel, and acts directly and indirectly in the interest of Nieves Transport in relation to its employees.  By Defendant Nieves' own admission, he founded Nieves Transport and continues to direct its operations.

4.  Defendant Rosendo, residing within the jurisdiction of this court, is secretary and treasurer of Nieves Transport, actively controls and manages this corporation by regulating the employment of its personnel, and acts directly and indirectly in the interest of Nieves Transport in relation to its employees.

5.  Defendants are employers of the employees listed in the attached Appendixes A & B ("truck drivers" or "employees"), all of whom were or are employed as truck drivers for Defendants.[1]

_____

[1]After careful scrutiny and independent calculations of a representative sample, we attach Plaintiff's Exhibit A and B as our Appendixes A and B, respectively.  We note that in situations like the present where the employers have failed to keep adequate records, see findings regarding record-keeping, a district court may rely upon the Secretary's calculations to identify employees and calculate back wages. See United States Dep't of Labor v. Cole Enter., Inc., 62 F.3d 775, 781 (6th Cir. 1995); Brock v. Norman's Country Market, Inc., 835 F.2d 823, 828 (11th Cir. 1988).  As in Cole Enterprises, Plaintiff here based the calculations on the employees' interview statements, the employment records, and the employees' testimony at trial. See Brief for Plaintiff at 28-29, Docket Document No. 33; Cole Enter., 62 F.3d at 781.

Civil No. 96-2479 (JAF)                                              -4-

6.  Between June 20, 1993 and the present, Defendants have employed over one-hundred truck drivers.

7.  Defendants, on average, employ approximately twelve truck drivers at any given time.

8.  Defendants have employed personnel in commerce, as defined in 29 U.S.C. § 203(b),[2] in a business which, at all relevant times, has had an annual gross volume of sales of not less than $500,000.

B.  **Nature of Business**

9.  Defendants employ truck drivers who regularly drive Defendants' trucks and transport materials, which oftentimes originate from various states within the United States, between points in Puerto Rico.

10.  All deliveries made by Defendants' employees are between two locations within Puerto Rico.

11.  The materials which Defendants' employees regularly deliver by truck include, inter alia, petroleum products, glass bottles, cardboard boxes, raw materials, freight of all kinds, food stuffs, and lumber.

12.  Truck deliveries utilize either a container truck, consisting of a truck cab and an attached rectangular inter-modal

_____

[2]Commerce is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Civil No. 96-2479 (JAF)                                                    -5-

container, or a tanker truck, consisting of a truck cab and an attached tanker.   Container trucks transport all cargo except petroleum products; tanker trucks transport petroleum products.

13.  Concerning container trips:

(a)   In a container trip, an employee drives one of Defendants' truck cabs from Nieves Transport's truck yard to a pre-established location.   When the driver reaches the destination, he attaches an inter-modal container to the truck cab and delivers the inter-modal container to another location, including, but not limited to, Navieras, Sealand, Puerto Nuevo, TMT (Isla Verde), Sea Barge (Isla Grande), and Puerta de Tierra.

(b)   The customers to whose facilities the employees transport the containers include Owens-Illinois, APA World Transport, Goya, Casa de las Escaleras, and Futones.

(c)   If the inter-modal container the driver has taken to the customer's facility is empty, the driver exchanges the empty container for a full one, waits while the empty container is filled, or leaves the empty container at the facility.   If the employee exchanges the container or waits for the empty container to be filled, once he has a full container, he attaches it to the truck's cab and drives the truck to another client's location, where he leaves the full inter-modal container, replaces it with an empty container, and begins the whole process again.

Civil No. 96-2479 (JAF)                                                    -6-

(d)   If the inter-modal container the driver has taken to the customer's facility is full, the driver exchanges it for an empty one, waits while the full container is emptied, or leaves the full container at the facility.  If the employee exchanges the container or waits for the full container to be emptied, once the container is empty, he attaches it to the truck's cab and drives the truck to another client's location, where he exchanges the empty container for a full one and begins the whole process again.

14.   Concerning tanker trips:

(a)   An employee drives a truck cab with an empty tanker attached from Defendants' truck yard to a pre-established location, where the tanker is filled with bunker or diesel.  After the tanker is filled, the driver delivers the contents to one of the harbors in Puerto Rico or to a customer's facility, where the tanker is emptied. Once the tanker is empty, the driver either returns to Defendants' truck yard or to one of the harbors or other petroleum distribution locations, where the tanker is again filled with bunker or diesel.

(i)   The locations where the petroleum products are loaded include, inter alia, Gulf, Esso, Sun Oil, Caribbean Petroleum, Texaco, Harbor Fuel at Pier 8 or the Frontier Pier in San Juan, Shell, and Piers 6 and 9.

(ii)   The locations where the petroleum products are delivered and the tankers emptied include, inter alia, ships in Ponce

AO 72
(Rev 8/82)

Civil No. 96-2479 (JAF)                                          -7-

1    and Mayaguez, barges in San Juan, the municipal piers in Mayaguez and

2    Ponce, Harbor Fuel, and Luis Ayala Colón in Ponce, as well as

3    facilities of various customers including Serrallés, Abbot, Owens-

4    Illinois, Starkist and Bumblebee, Carlos Ocasio, Haynes, Bristol,

5    Upjohn, Eli Lilly, and Life Savers.

6          (b)   When loading or unloading bunker or diesel, truck

7    drivers almost always wait in line for a substantial amount of time

8    behind other trucks which are also awaiting their turn to load or

9    unload the petroleum product cargo they are carrying.

10

11          (i)   The wait to load bunker or diesel is usually

12    several hours long because of the number of trucks in front of

13    Defendants' truck and because of the length of time it takes to load

14    each of those trucks.   The average number of trucks ahead of

15    Defendants' truck is usually three.   The time needed to load each of

16    those trucks with the bunker or diesel averages over forty minutes.

17

18          (ii)   The wait to unload bunker or diesel is also

19    usually several hours long, again because of the number of trucks in

20    front of Defendants' truck and because of the length of time it takes

21    to unload each of those trucks.   The average number of trucks ahead

22    of Defendants' truck is usually four trucks.   The time needed to

23    unload the bunker or diesel from each of those tankers averages just

24    over one hour.

25

26

Civil No. 96-2479 (JAF)                                                    -8-

(c)   In addition, the tanker trips take a substantial amount of time because:

(i)   The distances between loading and unloading are often great;

(ii)  The bunker or diesel is a heavy product, and, consequently, the truck drivers must steer their vehicles with great caution and slow speed; and

(iii)  The ship to be loaded with bunker often does not arrive on schedule.

(d)   Defendants' employees work during the day and night while on bunker trips.

(i)   The places to load and unload bunker and diesel can be open twenty-four hours a day to accommodate the transfer of the cargo.

(ii)  Employees frequently arrive at a facility before it opens to secure a choice position in the line of trucks.  These times can be as early as 1:00 A.M., as some petroleum distribution refineries open at 3:00 A.M.

(e)   Defendants assign tanker trips on the basis of seniority.

(f)   Despite the longer hours required, many employees prefer tanker trips to container trips because:

Civil No. 96-2479 (JAF)                                                    -9-

    (i)  Defendants pay more money for tanker trips than container trips; and

    (ii)  The employee only has to drive on the tanker trip, whereas a container trip requires that the driver also attach and detach the inter-modal containers as part of his duties.

    15.  On days that employees drive Defendants' trucks, these drivers spend the entire work day driving, loading, unloading, or waiting in line.  In most instances, employees do not take time to eat a meal, but rather buy or bring food and eat it later when they reach their destination or while they are waiting in line.  Employees do not take time for meals because if the employee stops to eat, other trucks may reach their mutual, final destination before him, thereby increasing the amount of time the employee will have to wait in line behind other trucks.

    16.  Defendants have no corporate or other relationship with the ocean-going vessels, oil-refineries, local retail sellers of oil products, or any other person or entity for which Defendants' employees transport materials, except to the extent that these persons are customers or clients of Defendants.

  C. **Defendants' Method of Payment to Their Truck Drivers**

    17.  Since at least June 1993, Defendants have paid their truck drivers by the trip rather than by the hour.  Defendants do not

Civil No. 96-2479 (JAF)                                                        -10-

pay their employees any remuneration for their work other than the
per-trip rate.

18.  Defendants pay their employees a fixed amount for each
type of trip.  For example, Defendants pay their employees $60 for a
tanker trip to Mayaguez, $35 for a tanker trip to Abbott, $5 for a
trip with an empty container to Goya ($7 with a full container), and
$10 for a trip to Owens-Illinois with an empty container ($12 for a
trip with a full container).

19.  Regardless of the trip's time duration, the trip rate
does not vary.

20.  Although Defendants adduced some evidence that other
trucking companies in Puerto Rico also pay their drivers on a per-
trip rate, Defendants did not present proof that these same companies
do not supplement the per-trip rate with overtime or minimum wage
compensation.

D.    **The Amount of Time that Truck Drivers Worked**

21.  The fourteen employees who appeared before this court
- including three who testified for Defendants - uniformly testified
to working more than eight hours per day.

22.  These employees also testified, and the trip records
establish, that they drive the trucks - except in a few workweeks -
between five and seven days per week.

Civil No. 96-2479 (JAF)                                               -11-

23.  The witnesses testified that other employees drive the same trips, working hours similar to those worked by the employees who testified.  The witnesses were familiar with the work patterns of other employees because the employees keep in contact by radio when they are driving and in person when they are waiting in line.

24.  The actual number of hours each employee works on a given day varies by the types of trips that he drives that day, which can be any one of the following:

(a) A day when an employee drives only container trips;

(b) A day when an employee drives only tanker trips;

(c) A day when an employee starts the day driving container tips and then switches and begins driving tanker trips; or

(d) A day when an employee starts the day driving tanker trips and then switches and begins driving container trips.

25.  Based on the employees' testimony, the average number of hours that an employee drives per day is as follows:

(a) Twelve hours per day when driving only container trips;

(b) Fifteen hours per day when driving only tanker trips;

(c) Twenty-two hours per day when driving container trips and then switching to tanker trips; and

(d) Fourteen hours per day when driving tanker trips and then switching to container trips.

Civil No. 96-2479 (JAF)                                    -12-

26.  The number of each type of day's driving that an employee does in a representative week can be determined for 60 of the 101 employees either from the trip records or from the employees' testimony.

27.  In addition to the sixty employees, there are forty-one employees who are not included in the trip records produced by Defendants and who did not testify.  Accordingly, the actual number of hours each of these forty-one employees drive in a typical week cannot be determined as they have been for the sixty employees for whom employment records exist.  The only fair way to establish the hours these employees drive per week is to use the average number of hours the sixty employees, discussed above, drive per week.

28.  The average of the hours that each of these sixty employees spend driving is sixty-eight hours per week.

29.  Accordingly, we use sixty-eight hours as the average number of hours that the remaining forty-one truck driver employees work per week driving trucks.

30.  In addition to driving the trucks, Defendants' truck drivers wash the trucks assigned to them each weekend.

31.  Defendants do not pay the employees for washing the trucks.

32.  Employees on average spend approximately four hours washing Defendants' trucks.

Civil No. 96-2479 (JAF)                                          -13-

33.   If an employee refuses to wash his truck, employees have testified that Defendants have refused to schedule work for the employee for several days, given the preferred schedules to other drivers, and, in one instance, fired an employee.

34.   Given the circumstances under which Defendants' employees have to wash the trucks assigned to them, we do not find credible Defendants' assertions that they did not require their employees to wash their trucks every week.  On the contrary, we find that washing trucks was one of the duties of the employees.

35. The total number of hours each of the employees works per week is between 58 and 105 hours per week, and the average number of hours worked by the truck drivers is seventy-two, including time spent washing the trucks.

**E.   Overtime Violations**

36.  For the period June 1993 to, at least, September 1999, Defendants conceded that they did not pay their employees overtime compensation for hours in excess of forty that they worked.

37.  For all relevant workweeks between June 20, 1993, and, at least, September 13, 1999, Defendants have employed truck drivers who have worked more than forty-hour weeks and yet not received overtime compensation.

Civil No. 96-2479 (JAF)                                        -14-

38.  Since Defendants' truck drivers worked over forty-hour weeks and Defendants have never paid them overtime compensation for these hours, Defendants owe the truck drivers overtime compensation.

39.  To compute the overtime back wages due to Defendants' truck driver employees, each employee's regular hourly rate of pay for each particular week must be established.

(a)  When, as here, an employee is paid on a per-trip basis, the employee's regular hourly rate for a given week is determined by dividing the total (gross) amount the employee is paid by the number of hours he worked.

(b)  Once such regular rate is established, the employee "is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." 29 C.F.R. § 778.112.

(c)  We followed this formula specified in 29 C.F.R. § 778.112 in calculating the overtime back wages due in this case.

(i)  Defendants' payroll records helped determine the gross pay for each employee.

(ii)  The number of hours each employee works per week is established as discussed in Findings of Fact, Numbers 21-35.

(iii) When the gross pay per week is divided by the number of hours worked per week, the employee's regular rate for that week is established.

Civil No. 96-2479 (JAF)                                                    -15-

(iv)   Once the regular rate is thus determined pursuant to 29 C.F.R. § 778.112, the overtime back wages are calculated by multiplying that regular rate by the number of overtime hours the employee works in the week, dividing this product in half, and adding the result of the division to the product.

(v)  Adding all the half-time due for all of the weeks the employee works gives the total overtime back wages that the employee is owed.

(d)   The Wage-Hour regulations mandate this procedure in a situation where employee drivers are paid on a per-trip basis that employee's "regular rate is determined by totaling all the sums received at such . . . job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112.

40.   If the regular rate thus established is below the federally-mandated minimum wage, the regular rate must be raised to the minimum wage rate before the calculation is done.   Once the regular rate has been raised to the minimum wage rate, the calculation is precisely the same – the minimum wage regular rate is multiplied by the number of overtime hours worked and the resultant figure is divided in half, to give the additional half-time required for the overtime hours.

41.   In the instant case, calculations performed pursuant to the above formula reveal that Defendants owe a total amount of

Civil No. 96-2479 (JAF)                                           -16-

overtime back wages of $289,062.62 to 101 of their truck driver

employees.  The amount of overtime back wages due to each of these

employees is specified in Appendixes A and B.

F.   **Minimum Wage Violations**

42.  From April 1, 1991, to October 1, 1996, the minimum

wage was $4.25 an hour.  From October 1, 1996, to September 1, 1997,

the minimum wage was $4.75 per hour.  On September 1, 1997, the

minimum wage rose to $5.15 per hour.

43.  From September 14, 1996, until September 13, 1999,

Defendants regularly paid their employees at rates below the minimum

wage, as specified in Appendix A.

44.  Given the calculations in Appendix A, Defendants owe

a total amount of minimum wage back wages of $129,295.70 to seventy-

nine of their truck drivers for the same three-year period.  The

amount of minimum wage back wages due to each employee is specified

in Appendixes A and B.

G.   **Record-Keeping Violations**

45.  It is undisputed that Defendants keep no records of

the number of hours that their employees work.

46.  Defendants have not alleged nor argued that they keep

records of how many hours their truck drivers work.  Defendants'

payroll records support this finding.

AO 72
(Rev 8/82)

Civil No. 96-2479 (JAF)                                                    -17-

47.  The testimony of the truck drivers confirmed the fact that Defendants do not maintain records of the number of hours worked by employees.

48.  Thus, Defendants have failed to record the total daily and weekly hours employees worked, the employees' regular hourly rates of pay for each week that overtime is worked, and the total weekly premium pay for overtime hours, as required by 29 C.F.R. §§ 516.2 and 516.5.

H.    **Willfulness and Statute of Limitations**

49.  At the beginning of her investigation of Defendants in 1995, the Wage-Hour Investigator for the Department of Labor informed Defendants of their responsibility under the Act to maintain records and pay minimum wage and overtime, as needed.

50.  Instead of complying, Defendants have attempted to excuse their continuing violations of the Act.  First, during the original investigation in 1995, Defendants argued that their truck driver employees are independent contractors. Ultimately, Defendants dropped this defense after the complaint was filed, and substituted the argument of an exemption under section 13(b)(1) of the Act, 29 U.S.C. § 213(b)(1).

51.  This section 13(b)(1) argument was never made to the Wage-Hour Investigator during the investigation, arising for the first time in Defendants' answer to the complaint.

Civil No. 96-2479 (JAF)                                          -18-

52.  Even after this court ruled in January 1999 that there is no section 13(b)(1) exemption under the facts in this case, Defendants have continued their remuneration practices and raised again in their brief to the court, as their primary argument, the section 13(b)(1) defense.

53.  Similarly, Defendants have never kept the records of pay and hours worked required by section 11(c) of the Act.

54.  Under the "Waiver of the Statute of Limitations" executed by the parties herein, the applicable statute of limitations is counted back from June 20, 1996, rather than from the date the complaint was filed, December 2, 1996.

55.  As discussed herein, Defendants' violations of the Act are willful and, therefore, the statute of limitations permits employees to recover back wages for overtime compensation from Defendants commencing three years prior to June 20, 1996, or June 20, 1993.

I.  **Liquidated Damages**

56.  Defendants' lack of good faith in their failure to pay their employees the required wages is demonstrated by their continuing, unsuccessful - if not frivolous - excuses for not complying with the Act, first with an independent contractor defense, and then with a section 13(b)(1) defense.

Civil No. 96-2479 (JAF)                                          -19-

(a)   That such defenses are not objectively reasonable is demonstrated by the fact that the only defense Defendants raised during the investigation (the independent contractor argument) was hastily abandoned once the litigation commenced, and the second defense (the section 13(b)(1) argument) has been ruled against by this court.

57.   Defendants adduced some evidence that other trucking companies in Puerto Rico also pay drivers on a trip rate basis.

58.   However, Defendants did not adduce any evidence that when other trucking companies pay drivers by the trip, such trucking companies do not pay proper overtime and minimum wages to those drivers.

J.   **Injunction Restraining Future Violations of the Act**

59.   Following the Department of Labor investigation and even following the court's ruling that Defendants were not exempt under section 13(b)(1) of the Act, at which time Defendants unequivocally knew that they are required to keep records and pay their truck driver employees overtime compensation under the Act, Defendants have refused intentionally to pay the required overtime compensation, as well as continuing to violate the minimum wage and record-keeping provisions of the Act.

60.   Indeed, Defendants presently continue not to pay proper overtime and minimum wage compensation, and still are not

Civil No. 96-2479 (JAF)                                              -20-

recording employees' hours of work, thereby continuing to violate the wage and record-keeping requirements of the Act.

61.  Such continued, consistent refusal to comply with the FLSA's requirements mandates the issuance of an injunction and renders any future promises of compliance unreliable.

## II.  <u>CONCLUSIONS OF LAW AND SPECIFIC FINDINGS IN SUPPORT THEREOF</u>

### A.  <u>Statute of Limitations</u>

Actions to recover unpaid minimum wages, unpaid overtime compensation, and liquidated damages under the FLSA should be filed within two years of the cause of action. <u>See</u> 29 U.S.C. § 255(a) (1994).  If, however, the violations of the Act are willful, the action to recover damages may be filed within three years of the date that the cause of action accrued. <u>See</u> <u>id.</u>

In this case, the relevant period of inquiry would thus be from December 2, 1996, until September 13, 1999.  However, under the "Waiver of the Statute of Limitations" executed by the parties, the applicable statute of limitations for overtime back wages is counted back from June 20, 1996, rather than December 2, 1996, the date the complaint was filed. <u>See</u> attached Appendix C.

### B.  <u>Defendants as Employers</u>

The Act defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor

Civil No. 96-2479 (JAF)                                                -21-

organization (other than when acting as an employer) or anyone acting

in the capacity of officer or agent of such labor organization." 29

U.S.C. § 203(d).

Four factors determine whether a person is an employer under the

Act. An employer has the ability to hire and fire employees,

supervise and control employee work schedules or conditions of

employment, determine the rate and method of payment, and maintain

employment records. See Baystate Alternative Staffing, Inc. v.

Herman, 163 F.3d 668, 675 (1st Cir. 1998) (relying on the factors

utilized in Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465,

1470 (9th Cir. 1983)).

With regard to the 101 truck drivers of this case, Defendants

have hired them all, fired several of them, set a per-trip rate of

pay, and maintained records of the trips that many employees have

performed for Defendants. Accordingly, we find, and both parties

concede, that Defendants Nieves Transport, Nieves, and Rosendo are

employers under the Act.

C.    **Coverage**

The FLSA pertains to every employee who works for an "enterprise

engaged in commerce or in the production of goods for commerce." See

29 U.S.C. §§ 206(a), 207(a)(1), 211(c). Given our previous factual

findings, we find that Defendants are an enterprise within section

3(r) of the Act because they are engaged in related activities with

Civil No. 96-2479 (JAF)                                    -22-

unified operations or common control for a common business purpose.
See 29 U.S.C. § 203(r); Falk v. Brennan, 414 U.S. 190, 196 n.8
(1973).[3]

Given that Defendants employ truck drivers for the
transportation of various goods and gross over $500,000 during the

_____

[3]According to the Act, enterprise is defined as:

> [T]he related activities performed (either
> through unified operation or common control) by
> any person or persons for a common business
> purpose, and includes all such activities
> whether performed in one or more establishments
> or by one or more corporate or other
> organizational units including departments of an
> establishment operated through leasing
> arrangements, but shall not include the related
> activities performed for such enterprise by an
> independent contractor. Within the meaning of
> this subsection, a retail or service
> establishment which is under independent
> ownership shall not be deemed to be so operated
> or controlled as to be other than a separate and
> distinct enterprise by reason of any
> arrangement, which includes, but is not
> necessarily limited to, an agreement, (A) that
> it will sell, or sell only, certain goods
> specified by a particular manufacturer,
> distributor, or advertiser, or (B) that it will
> join with other such establishments in the same
> industry for the purpose of collective
> purchasing, or (C) that it will have the
> exclusive right to sell the goods or use the
> brand name of a manufacturer, distributor, or
> advertiser within a specified area, or by reason
> of the fact that it occupies premises leased to
> it by a person who also leases premises to other
> retail or service establishments.

29 U.S.C. § 203(r).

Civil No. 96-2479 (JAF)                                          -23-

relevant time period, we find that they constitute an enterprise

engaged in commerce under 29 U.S.C. § 203(s)(1)(A).[4]    Therefore,

Defendants' truck drivers have been employed in an enterprise engaged

in commerce from June 20, 1993 until, at least, September 13, 1999.

As we have stated, under 29 U.S.C. § 255(a), the statute of

limitations bars wage claims occurring more than two years prior to

the date the complaint is filed, unless the violation is found to be

willful, in which case the period of recovery is three years.    A

violation of the FLSA is willful within the meaning of section 6 of

the Portal-to-Portal Act if  "[t]he employer either knew or showed

reckless disregard for the matter of whether its conduct was

prohibited by the statute." <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S.

128, 133 (1988); <u>see</u> <u>Baystate Alternative Staffing</u>, 163 F.3d at 679;

<u>Reich v. Newspapers of New England, Inc.</u>, 44 F.3d 1060, 1079-80 (1st

Cir. 1995) (quoting <u>Richland Shoe Co.</u>, 486 U.S. at 133).    Similarly,

---

[4]The Act defines, in relevant part, an enterprise engaged in commerce or in the production of goods for commerce as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).

Civil No. 96-2479 (JAF)                                                    -24

the term willfulness is synonymous with the terms "voluntary,"
"deliberate," and "intentional". <u>Richland Shoe Co.</u>, 486 U.S. at 133.
"Neither an employer's good faith nor his ignorance of the governing
statutes and regulations precludes a finding of willfulness." <u>Dole v.</u>
<u>Solid Waste Servs., Inc.</u>, 733 F.Supp. 895, 927 (E.D. Pa. 1989)
(quoting <u>Donovan v. Sabine Irrigation Co., Inc.</u>, 695 F.2d 190, 196
(5th Cir. 1983)) (citations omitted).

        We find that Defendants deliberately and intentionally violated
the Act.  Since 1995, Defendants have known of the Act's minimum
wage, overtime compensation, and record-keeping requirements.
Nevertheless, they have continued to underpay their employees and
keep inadequate employment records.  In addition, even after January
1999, when Defendants knew that neither the independent contractor or
the section 13(b)(1) defense was available to them, Defendants
obstinately refused to comply with the requirements of the Act.  We
find such a deliberate, recalcitrant snubbing of the Act to be
willful.  Therefore, Defendants willfully violated sections 6, 7,
11(c), 15(a)(2), and 15(a)(5) of the Act.

        Because the violations were willful, the statute of limitations
permits employees to recover unpaid overtime compensation from
Defendants commencing three years prior to June 20, 1996, or June 20,
1993.  For minimum wage violations, the three-year statute of
limitations will be counted back from the date that we granted

Civil No. 96-2479 (JAF)                                          -25-

Plaintiff's motion to amend the pleadings to conform to the proof

presented at trial and to allege violations of the minimum wage

provisions of the Act.  Thus, the three-year statute of limitations

for minimum wage violations is three years back from September 13,

1999, or September 14, 1996.

D.    **Representative Testimony**

Generally, an employee who brings suit against his employer for

unpaid minimum wages or overtime compensation has the burden of

proving that the employer did not compensate him for completed work.

See <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946).

"When the employer has kept proper and accurate records, the employee

may easily discharge his burden by securing the production of those

records." <u>Id.</u>  However, where an employer violates his statutory duty

to keep an accurate record of all of the hours worked by its

employees, the employee,

> [h]as carried out his burden if he proves that
> he has in fact performed work for which he was
> improperly compensated and if he produces
> sufficient evidence to show the amount and
> extent of that work as a matter of just and
> reasonable inference.  The burden then shifts to
> the employer to come forward with evidence of
> the precise amount of work performed or with
> evidence to negative the reasonableness of the
> inference to be drawn from the employee's
> evidence.

<u>Mt. Clemens</u>, 328 U.S. at 687-88.

Civil No. 96-2479 (JAF)                                              -26-

It is well established that not all employees need testify in order to prove the violations or to recoup back wages. See Mt. Clemens, 328 U.S. 680 (8 out of 300 employees testified). Mt. Clemens has been interpreted to allow back-pay awards for FLSA violations to a group of employees where only some of these employees testified as to hours worked and wages paid, the overall damage award being reasonably inferred. See, e.g., Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 66-68 (2nd Cir. 1997) (representative testimony of 39 of approximately 1,500 employees, or 2.5 percent of the total number of employees for whom back wages were sought, was adequate to support an award of back wages for all of the employees); Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 472-73 (11th Cir. 1982) (23 employees testified; back wages awarded to 207 employees); Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973); McLaughlin v. DialAmerica Mktg., Inc., 716 F.Supp. 812, 824-25 (D.N.J. 1989) (testimony of 43 witnesses, both at trial and by deposition, confirms existence of violations for approximately 350 non-testifying employees); Donovan v. Kaszycki & Sons Contractors, Inc., 599 F.Supp. 860, 868 (S.D.N.Y. 1984) (29 employees testified by deposition; backwages awarded to over 200 employees).

Thus, in a typical FLSA case, the Secretary presents testimony from some of the affected employees as part of the proof of a prima facie case. The Secretary then can rely on testimony and evidence

Civil No. 96-2479 (JAF)                                    -27-

from representative employees to meet the initial burden of proof

requirement. See Dole v. DeSisto, 929 F.2d 789, 792 n.1 (1st Cir.

1991) (citations omitted); see also Martin v. Selker Bros., Inc., 949

F.2d 1286, 1298 (3rd Cir. 1991) ("It is not necessary for every single

affected employee to testify in order to prove violations or recoup

back wages.  The testimony and evidence of representative employees

may establish prima facie proof of a pattern and practice of FLSA

violations.") (citations omitted).

        We also find that Plaintiff is not required to show, nor are we

required to determine, the precise number of hours worked by non-

testifying employees.    Rather, the Secretary need only present

sufficient evidence for us to make a reasonable inference as to the

number of hours worked by non-testifying employees.  Where, as in the

present case, plaintiff's proof establishes the presence of practices

in violation of the Act, the existence of the violations as well as

an award of backwages may be inferred for employees that do not

testify. See Marshall v. Mammas Fried Chicken, Inc., 590 F.2d 598,

599 (5th Cir. 1979) (per curiam) ("Although the evidence was not

perfectly accurate, it provided a sufficient basis to calculate the

number of hours worked by each employee.") (citations omitted).

        Once violations of the Act's provisions are found and plaintiff

has produced sufficient evidence to calculate the wages due as a

matter of just and reasonable inference, the burden shifts to the

Civil No. 96-2479 (JAF)                                        -28-

employer to produce evidence of the exact amount of work performed or
to negate the reasonableness of the plaintiff's evidence. See Mt.
Clemens, 328 U.S. at 687-88.    To rebut Plaintiff's evidence,
Defendants must produce a precise accounting of hours worked by their
employees. See Brock v. Seto, 790 F.2d 1446, 1448-49 (9th Cir. 1986)
(quoting Mt. Clemens, 328 U.S. at 693); Skipper v. Superior Dairies,
Inc., 512 F.2d 409, 420 (5th Cir. 1975).

We find that the testimony of the fourteen truck drivers who
testified at trial provides us with an adequate basis for determining
the average number of hours worked by both the testifying and the
non-testifying employee truck drivers.    The evidence adduced by
Plaintiff was more than sufficient to establish a pattern and
practice of Defendants' violations of the Act and provide the court
with sufficient proof to show the amount and extent of Defendants'
truck drivers' work as a matter of just and reasonable inference.

After Plaintiff adduced such evidence, the burden shifted to
Defendants to produce evidence of the exact amount of work performed
or to negate the reasonableness of Plaintiff's evidence with a
precise accounting of hours worked by employees.   Defendants did not
meet their burden of proof on this issue.  We find that the employees
who testified on Defendants' behalf substantiated the violations of
the Act proven by Plaintiff.  Defendants could not - and did not -
make the required accounting.   Because the Plaintiff adduced

Civil No. 96-2479 (JAF)                                      -29-

compelling, representative testimony concerning the hours worked by Defendants' truck drivers, we find that we can reasonably infer the number of hours worked per week by all of Defendants' truck drivers for the period in question.

E. **<u>Overtime Compensation Violations</u>**

Section 7(a)(1) prohibits employers from employing any worker "for a workweek longer than forty hours unless such employee receives compensation [for those hours worked in excess of forty during the same week] . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207 (a)(1). Section 15(a)(2) of the Act makes it unlawful to violate section 7 of the FLSA. <u>See</u> 29 U.S.C. § 215(a)(2). An employee's regular hourly rate of pay is determined "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek." 29 C.F.R. § 778.109 (1998).

In this case, Defendants pay their truck drivers for the type of trips they complete, not by the number of hours worked on any particular or all tasks. Defendants' employees receive no other form of remuneration. In such situations, the employee's "regular rate is determined by totaling all the sums received at such . . . job rates in the workweek and dividing by the total hours actually worked." 29 C.F.R. § 778.112. Once the regular rate is established, the employee

Civil No. 96-2479 (JAF)                                              -30-

is "entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek." Id.

In this case, Defendants have violated sections 7 and 15(a)(2) of the Act by employing employees for workweeks of over forty hours without compensating them at time and one-half the employee's regular rate of pay for hours in excess of forty which they worked.

To determine the number of hours that Defendants' employees worked in any given week, we must first identify which activities performed by the employees qualify as part of their employment. An "activity is employment under the Act if it is done at least in part for the benefit of the employer, even though it may also be beneficial to the employee. 'The crucial question is not whether the work was voluntary but rather whether the [employee] was in fact performing services for the benefit of the employer with the knowledge and approval of the employer.'" Secretary of Labor v. E.R. Field, Inc., 495 F.2d 749, 751 (1st Cir. 1974) (quoting Republican Publ'g Co. v. American Newspaper Guild, 172 F.2d 943, 945 (1st Cir. 1949)). Employment activities may include acts "performed either before or after the regular work shift, on or off the [road], if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by section 4(a)(1) of the [Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (1994)]." Steiner v. Mitchell, 350 U.S.

Civil No. 96-2479 (JAF)                                          -31-

247, 256 (1956); see Ballou v. General Elec. Co., 433 F.2d 109, 110

(1st Cir. 1970).

In this case, Defendants' employees drove trucks as their

principal activity. They also spent time: (1) waiting in line for

their trucks to be loaded and unloaded; (2) washing the trucks

assigned to them; (3) checking and servicing the trucks; and

(4) fueling the trucks. We consider these secondary activities to be

integral and indispensable to the employees' truck driving duties.

See Barrentine v. Arkansas-Best Freight System, Inc., 750 F.2d 47, 51

(8th Cir. 1984); Mitchell v. Mitchell Truck Line, Inc., 286 F.2d 721,

725 (5th Cir. 1961). Accordingly, the time that the employees spent

driving Defendants' trucks and engaging in these other activities are

covered by the Act and not specifically excluded by the Portal-to-

Portal Act. See Reich v. John Alden Life Ins., 126 F.3d 1, 6 (1st Cir.

1997) (relying on Newspapers of New England, 44 F.3d 1060); see also

Mitchell, 286 F.2d at 723. Thus, in conformity with the Act's

minimum wage and overtime requirements, Defendants should have

maintained records of these activities and compensated the truck

drivers for the time worked on them.

In summary, Defendants, in all workweeks between June 20, 1993,

and the present, have violated the provisions of sections 7 and 15(a)

(2) of the Act by employing employees for workweeks longer than those

prescribed in section 7 of the Act without compensating said

Civil No. 96-2479 (JAF)                                          -32-

employees for their hours over forty per week at time and one-half

the employees' regular rates of pay.  Therefore, Defendants are

liable for unpaid overtime compensation under section 7 of the Act,

and an equal amount in liquidated damages under section 16(c) of the

Act.

F.  **Minimum Wage Violations**

Section 6(a)(1) of the Act, 29 U.S.C. § 206(a)(1), requires an

employer in an enterprise engaged in commerce or in the production of

goods for commerce to pay each of its employees not less than the

applicable minimum wage.  This provision hopes to guarantee a minimum

livelihood to those workers covered by the Act. See United States v.

Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2nd Cir. 1960)

(citing Conference Report, H.R. Rep. No. 2738, 75th Cong., 3d Sess.

28 (1938); Sen. Rep. No. 884, 75th Cong., 1st Sess. 1-3 (1937); H.R.

Rep. No. 1452, 75th Cong., 1st Sess. 8-9 (1937)).  To accomplish

Congress' objective for the minimum wage provision, "the total weekly

wage paid by an employer [should meet] the minimum weekly

requirements of the statute, such minimum weekly requirement being

equal to the number of hours actually worked that week multiplied by

the minimum hourly statutory requirement." Id.

As demonstrated by Appendix A, Defendants, between September 13,

1996 and September 14, 1999, have repeatedly violated sections 6 and

15(a)(2) of the Act by paying their employees below the minimum rate

Civil No. 96-2479 (JAF)                                                    -33-

prescribed in section 6 of the Act, 29 U.S.C. § 206(a)(1).
Therefore, Defendants are liable for unpaid minimum wage
compensation, as calculated in Appendixes A and B.

   G.   **Record-keeping Violations**

   Section 11(c) of the Act requires an employer to "make, keep,
and preserve such records of the persons employed by him and of the
wages, hours, and other conditions and practices of employment
maintained by him." 29 U.S.C. §211(c). Section 15(a)(5) of the Act
makes it unlawful to violate section 11(c). See 29 U.S.C. 215(a)(5).

   The Secretary's implementing regulations are found at 29 C.F.R.
§ § 516 and require, inter alia, that employers preserve, for three
years, true and accurate records of: (1) the total daily and weekly
hours employees work; (2) employees' regular hourly rates of pay for
each week that overtime is worked; (3) the total daily or weekly
straight-time earnings; and (4) the total weekly premium pay for
overtime hours. See 29 C.F.R. § §§ 516.2 and 516.5; see, e.g., Myers
v. Copper Cellar Corp., 192 F.3d 546, 551 n.8 (6th Cir. 1999);
American Library Ass'n v. Reno, 33 F.3d 78, 91 (D.C. Cir. 1994);
Kaszycki, 599 F.Supp. at 867-68 (citations omitted).

   Given the testimony of numerous witnesses, including Defendant
Nieves, we find that Defendants violated 29 U.S.C. §§ 211(c) and
215(a)(5) by not maintaining adequate employment records of their
truck drivers.

Civil No. 96-2479 (JAF)                                                    -34-

### H.   Liquidated Damages

Pursuant to the authority granted to the Secretary of Labor by 29 U.S.C. § 216(c), Plaintiff seeks liquidated damages in this action.  Section 16(b) of the Act specifically permits liquidated damages in such types of actions. 29 U.S.C. § 216(b).[5]  Liquidated damages are meant to compensate employees for the losses that the employees have suffered by reason of not receiving money due them at the time that it was due. See Commissioner of Internal Revenue v. Schleier, 515 U.S. 323, 331 (1995) (quoting Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583-84 (1942)).  A court must grant liquidated damages unless the defendant establishes both that: (1) the violative acts or omissions by defendant were committed in good faith; and (2) the defendant had reasonable grounds for so acting. See McLaughlin v. Hogar San Jose, Inc., 865 F.2d 12, 13-14 (1st Cir. 1989).  Defendants generally do not meet this two-prong burden. See Southern New England Telecomms. Corp., 121 F.3d at 71 (quoting Brock v. Wilamowsky, 833 F.2d 11, 19 (2nd Cir. 1987)); Walton

_____

[5]The section provides in relevant part:

> Any employer who violates the provisions of section 6 and 7 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and an additional equal amount in liquidated damages.

29 U.S.C. § 216(b).

Civil No. 96-2479 (JAF)                                              -35-

v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986).

Finally, an unsuccessful motion to claim an exemption under section

13(b)(1) of the Act does not preclude a finding of a lack of good

faith and objective reasonableness. See Solid Waste Services, 733

F.Supp. at 928-30.

    We find that Defendants failed to show subjective good faith and

objective reasonableness by not paying their truck drivers the

minimum wages and overtime compensation due them.    Having been

informed of their responsibilities by the Wage-Hour Inspector,

Defendants knew of the minimum wage, overtime compensation, and

record-keeping requirements.    Nevertheless, they continued to under-

compensate their employees.    Accordingly, we award the employees an

amount equal to the damages for unpaid backwages. See General Motors

Acceptance, 482 F.2d at 829.

**I.    Prospective Injunction**

    Section 17 of the Act allows a court, in its reasonable

discretion, to issue an injunction restraining future violations of

the Act. See 29 U.S.C. § 217; Wirtz v. Flame Coal Co., 321 F.2d 558,

560 (6th Cir. 1963).    However, the Court's discretion is not

unbridled, see Dunlop v. Davis, 524 F.2d 1278, 1280 (5th Cir. 1975),

and the Court, when exercising it, should consider that the Secretary

vindicates a public, and not a private, right in seeking an

AO 72
(Rev 8/82)

Civil No. 96-2479 (JAF)                                    -36-

injunction. See Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383

(9th Cir. 1987).

   In determining whether to enjoin future violations, a trial

judge should weigh the finding of a violation of the Act against

various factors indicating reasonable likelihood that future

violations will not occur.  These include: (1) intent to comply; (2)

extraordinary efforts to prevent recurrence; (3) absence of

repetitive violations; and (4) absence of bad faith.  See Martin v.

Coventry Fire District, 981 F.2d 1358, 1362 (1st Cir. 1992) (citing

Big Bear Market, 825 F.2d at 1383).

   In addition, an injunction merely requires that a person do what

ought to be done.

          The issuance of an injunction . . . is not a
          drastic remedy.  The court merely requires the
          defendant to do that which the law commands.
          The primary function of the injunction is to
          shift the responsibility for monitoring
          compliance with the Act from the Labor
          Department to the employer.  It has been
          indicated that fairness in economy of
          administrative effort requires that after an
          employer has violated the provisions of the Act,
          he should bear the burden of future compliance.

Hodgson v. Parke, 324 F.Supp. 1297, 1300 (S.D. Tex. 1971) (citing

Goldberg v. Cockrell, 303 F.2d 811 (5th Cir. 1962)); see also Hodgson

v. First Fed. Savs. & Loan Ass'n of Broward County, Fla., 455 F.2d

818, 826 (5th Cir. 1972); DialAmerica, 716 F.Supp. at 826-27

(injunctions are issued because of public interest and to relieve

Civil No. 96-2479 (JAF)                                                    -37-

Secretary of the burden of enforcement).  Thus, in determining

whether to issue an injunction, we should also balance the light

burden the injunction would impose on the employer against the heavy

administrative and investigative responsibilities which non-issuance

would place on the Department of Labor. See Brennan v. City Stores,

Inc., 479 F.2d 235, 241 (5th Cir. 1973) (quoting Mitchell v. Pidcock,

299 F.2d 281, 287 (5th Cir. 1962); Hodgson v. Corning Glass Works, 330

F.Supp. 46, 51 (W.D.N.Y. 1971); Wirtz v. Harper Buffing Mach. Co.,

280 F.Supp. 376, 382 (D. Conn. 1968).

   In light of the long and offensive history of non-compliance,

Defendants' full knowledge of the Act's requirements, continuing

violations of the overtime compensation, minimum wage, and record-

keeping provisions of the Act, and the absence of any proposed plan

by Defendants for remedying the situation, we find that Plaintiff is

entitled to an injunction, pursuant to section 17 of the Act, which

permanently enjoins and restrains Defendants, their officers, agents,

servants, employees, and those persons in active concert or

participation with Defendants, from prospectively violating sections

6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act. See Metzler v. IBP,

Inc., 127 F.3d 959, 963 (10th Cir. 1997) (affirming issuance of

injunction because: (1) piecemeal efforts to comply were

insignificant; (2) violations of the Act continued; (3) reliable

testimony indicated future violations would occur; and (4) Act's

Civil No. 96-2479 (JAF)                                    -38-

violators refused to enter into compliance agreement with Secretary);

Reich v. Petroleum Sales, Inc., 30 F.3d 654, 657 (6th Cir. 1994)

(reversing denial of injunction because: (1) violations of the Act

continued; (2) no assurance of future compliance given; and (3) bad

faith demonstrated). We also find that an injunction is appropriate

in this case because testimony has demonstrated a high-turnover rate

in Defendants' employment rolls, thereby increasing the investigative

and administrative costs to the Secretary in enforcing the Act in the

absence of an injunction.

## III. ORDER OF JUDGMENT

In light of the aforementioned factual findings and conclusions

of law, we find that Defendants are liable for unpaid minimum wage

and overtime compensation in the amount of $418,358.32, plus an equal

amount in liquidated damages, for a total of $836,716.64, and **ORDER**

them to remit this amount in a time schedule acceptable to Plaintiff.

We also **ORDER** Defendants to submit all necessary employment

records to the appropriate authorities in the Department of Labor so

that they can determine what additional minimum wage, overtime

compensation, and liquidated damages, if any, are due to the truck

drivers for the period after September 13, 1999 to the present.

Civil No. 96-2479 (JAF)                                                    -39-

Finally, we **ENJOIN** Defendants from continued and future violations of sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Act.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 15th day of February, 2000.

JOSE ANTONIO FUSTE
U. S. District Judge